IN THE UNITED STATES DISTRICT COURTS

FOR THE EASTERN DISTRICT OF CALIFORNIA

AND THE NORTHERN DISTRICT OF CALIFORNIA

RALPH COLEMAN, et al.,

               Plaintiffs,             No. CIV S-90-0520 LKK JFM P (E.D.Cal.)

    vs.

ARNOLD SCHWARZENEGGER,
et al.,

               Defendants.

_____/

MARCIANO PLATA, et al.,

               Plaintiffs,             No. C 01-1351 TEH (N.D.Cal.)

    vs.

ARNOLD SCHWARZENEGGER,
et al.,

               Defendants.

_____/

CARLOS PEREZ, et al.,

               Plaintiffs,             No. C 05-05241 JSW (N.D.Cal.)

    vs.

JAMES TILTON, et al.,

               Defendants.

_____/

1

1    JOHN ARMSTRONG, et al.,

2              Plaintiffs,                    No. C 94-2307 CW (N.D.Cal.)

3         v.

4    ARNOLD SCHWARZENEGGER,            ORDER TO SHOW CAUSE
     et al.,
5
               Defendants.
6    _____/

7              The Receiver in Plata, the Special Master in Coleman, and the Court

8    Representatives in Perez and Armstrong  have presented to the judges in the above-captioned

9    cases an agreement that they have reached during the coordination meetings that they have held

10   to date.  The agreement, which is attached to this order, is presented to the undersigned for

11   review and approval.

12             Good cause appearing, IT IS HEREBY ORDERED that the parties in the above-

13   captioned cases are granted until November 26, 2007 to show cause why the attached agreement

14   should not be adopted as an order of the court.  Any response to this order to show cause shall be

15   filed in each of the above-captioned cases and served on all of the parties to all of the cases and

16   on the Receiver, the Special Master, and the Court Representatives.  Thereafter, the request for

17   /////

18   /////

19   /////

20   /////

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

approval of the agreement will be taken under submission for individual and joint consideration by the undersigned.

DATED:   11/13/07

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

DATED:   11/13/07

THELTON E. HENDERSON
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF CALIFORNIA

DATED:   11/13/07

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF CALIFORNIA

DATED:   11/13/07

CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF CALIFORNIA

# CONSTRUCTION

The Receiver in *Plata* has begun to implement three separate but related construction projects:

> A.  The construction of a medical center at San Quentin State Prison;

> B.  The addition of needed temporary and permanent clinical, office, supply, and record space at existing California Department of Corrections and Rehabilitation (CDCR) adult prisons; and

> C.   The construction of approximately 5,000 additional CDCR medical beds and approximately 5,000 CDCR mental heath beds.[1]

The Office of the Receiver will assume leadership responsibility for each of the above referenced projects.

1.  San Quentin Medical Center.  The *Plata* receivership is the project lead for the San Quentin construction. The Medical Center, which has already been designed and for which construction has commenced, will provide additional reception, clinical, treatment, and office space for CDCR medical, mental health, and dental personnel. Medical Center facilities will be ADA compliant. Court representatives from *Perez* and *Coleman* as well as CDCR mental health and dental officials have been active participants in the design stage for this construction. The State has determined that funding for the San Quentin Medical Center will be provided through Assembly Bill (AB) 900 funds.

2.  Additional temporary and permanent clinical, office, supply, and record space at CDCR prisons. The *Plata* receivership is the project lead for the additional medical construction projects at existing CDCR institutions. The Receiver is in the process of implementing his initial prison upgrade project at Avenal State Prison. Court representatives from *Coleman* and *Perez* have participated in this initial effort. The upgrades anticipated will be primarily medical; however the upgrades will conform to *Armstrong* requirements and will consider, when possible, some of the additional space needs of the CDCR mental health and dental programs. In this regard, the Court representatives in *Armstrong*, *Coleman*, and *Perez* agree to work with the Receiver by exploring with CDCR and their respective courts ways to effectuate the funding necessary for their specific programs in a timely and effective manner. This project will *not* involve the construction of the additional dental facilities necessary to effectuate the *Perez* roll-outs.

3.   The construction of approximately 5,000 additional CDCR medical beds and approximately 5,000 CDCR mental heath beds. The *Plata* receivership is the project lead for the 5,000/10,000 bed construction project. URS Corporation, Bovis Lend Lease, Brookwood Program Management, Lee Burkhard Liu, and Robert Glass & Associates will serve as the Receiver's Project Coordinator for 5,000/10,000 bed construction. The initial planning for design, site selection, and patient demographics will commence during August 2007.

Based on an initial review of the patient demographics by the Abt study, the Receiver anticipates that the majority of medical beds constructed will not be licensed. Given the significant need to

---

[1]  The actual number of medical and mental health beds to be constructed by the Receiver will depend upon site selection, contingency issues, determinations concerning what year to build out to, as well as possible coordination of construction with CDCR's AB 900 building projects.

coordinate the long-term treatment and care of mentally ill patients who also have serious medical problems, there exist both strong patient care and fiscal incentives to plan, design, and construct health care facilities that will effectuate coordinated medical and mental health treatment. Therefore, participation by *Coleman* representatives in this construction program is imperative. Likewise, the special needs of disabled and elderly prisoner/patients, who represent a significant number of patients who require improved housing, warrant participation by an expert in accessibility for persons with disabilities. The Court expert in *Armstrong* and the Receiver in *Plata* mutually selected such an expert who will be added to the program and who will communicate with both the *Armstrong* court expert and the Receiver about his recommendations. The new facilities will be designed and built to be in full compliance with applicable ADA requirements for both staff and inmates, including applicable accessibility provisions of the ADA Accessibility Guidelines, the Uniform Federal Accessibility Standards, and California Code of Regulations, Title 24, Part 2, California Building Code (CBC). The Receiver also intends to construct adequate dental clinics and other necessary dental program space in order to provide Perez standards of care for the prisoner/patients housed in the 5,000/10,000 bed facilities. Therefore, participation by a *Perez* representative will be necessary to coordinate dental construction design and planning. In this regard, the Court representatives in *Armstrong, Coleman,* and *Perez* agree to work with the Receiver by exploring with CDCR and their respective courts ways to effectuate the funding necessary for their specific programs in a timely and effective manner.

This project will *not* involve the construction of the additional dental facilities necessary to effectuate the *Perez* roll-outs.

The State has determined that funding for an 8,000-beds construction project will be provided through AB 900 funds. The *Coleman* Special Master and the *Plata* Receiver have indicated that up to 10,000 beds may be necessary. Whether the projected funding is adequate for the necessary construction will be determined by the Receiver after site selection issues, coordination issues, and design issues are resolved.