IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS PEREZ, et al.<br><br>    Plaintiffs,<br><br>v.<br><br>JAMES TILTON, et al.,<br><br>    Defendants.<br>_____ / | No. C 05-05241 JSW<br><br>**ORDER GRANTING DEFENDANTS' MOTION REGARDING CLASS DEFINITION AND DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION TO AMEND CLASS DEFINITION** |

**INTRODUCTION**

This matter comes before the Court upon consideration of the Motion re Class Definition filed by Defendants and upon consideration of the Motion to Amend the Class Definition filed by Plaintiffs. Having considered the parties' papers, relevant legal authority, the record in this case, and having had the benefit of oral argument, the Court HEREBY GRANTS Defendants' motion and DENIES without prejudice Plaintiffs' motion to filing a motion to amend the judgment.

**BACKGROUND**

On December 19, 2005, Plaintiff Carlos Perez, on behalf of himself and all similarly situated persons (hereinafter "Plaintiffs"), filed this action and alleged that the dental care system operated by the California Department of Corrections and Rehabilitation ("CDCR") was constitutionally inadequate. (Compl. ¶ 1.) Plaintiff Perez stated that he filed this action on behalf of himself and "all other California prisoners because the dental care system operated by

1 the [CDCR] does not and, with the current systems and resources, cannot properly deliver
2 necessary dental care to prisoners in its custody." (*Id.*)

3 On that same date, Plaintiffs submitted a proposed Stipulation and Order outlining a
4 settlement agreement that the parties had reached through informal negotiations that
5 commenced in August 2004. (*See* Docket Nos. 3, 4.) The parties subsequently submitted an
6 Amended Stipulated Settlement Agreement ("Amended Stipulation") for preliminary and final
7 approval.

8 On May 1, 2006, the Court granted the parties' motion for preliminary approval of the
9 Amended Stipulation and certified the following class for purposes of settlement and the
10 remedial phase of this litigation: "all current and future California state prisoners in the custody
11 of the California Department of Corrections and Rehabilitation with serious dental care needs."
12 (Docket No. 32 (Order Certifying Class for Purposes of Settlement and Remedial Phase of the
13 Litigation ("Class Cert. Order") at 4:7-9.) The Class Certification Order also refers to the fact
14 that "the State of California currently houses in 33 state prisons approximately 164,000 state
15 prisoners all of whom require dental screening, and many of whom will require dental services
16 for serious dental conditions." (*Id.* at 2:23-25.)

17 On August 21, 2006, this Court finally approved the Amended Stipulation. (*See* Docket
18 No. 69.) The Amended Stipulation refers to the class as "all California state prisoners in the
19 custody of the CDCR who have serious dental care needs." (*Id.* ¶ 10.) It further provides that,
20 pursuant to the Prison Litigation Reform Act, it is "intended to be narrowly drawn to meet
21 applicable standards." (*Id.* ¶ 3.) Further the Amended Stipulation, and the Implementation Plan
22 attached as Exhibit B, set forth remedial actions Defendants are to take within the 33
23 institutions listed therein. However, the Policies and Procedures, which are attached as Exhibit
24 A, states that "[i]t shall be the mission of the Division of Correctional Health Care Services
25 (DCHCS) Dental Department to promote, stabilize, and maintain the oral health of all inmates
26 incarcerated in the [CDCR]." (Amended Stipulation, Ex. A at 1.1-1.)

27 In approximately November 2006, the CDCR began to transfer prisoners to private
28 facilities in other states. It is undisputed that, at the time the parties negotiated the original

settlement agreement and the Amended Stipulation, that the parties did not contemplate that Defendants would transfer prisoners out-of-state. (*See* Declaration of Alison Hardy ("Hardy Decl."), ¶ 13; Declaration of Charles Antonen ("Antonen Decl."), ¶ 6; Declaration of William O. Kuykendall ("Kuykendall Decl."), ¶ 3.) As a result of these transfers, a dispute arose between the parties about whether those prisoners who have been transferred to private facilities in other states are members of the class. The parties also dispute whether prisoners who are housed in Community Correctional Facilities ("CCFs") are members of the class.

**ANALYSIS**

**A.   Legal Standards.**

Resolution of the parties' dispute about the proper definition of the class requires interpretation of the Amended Stipulation, and its attachments. The Court applies general principles of contract law to interpret these documents. *See, e.g., Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1990); *In re Cement and Concrete Antitrust Lit.*, 817 F.2d 1435, 1443 (9th Cir. 1987), *rev'd on other grounds California v. ARC American Corp.*, 490 U.S. 93 (1989). As in any contract case, interpretation of the Amended Stipulation is governed by the mutual intent of the parties at the time it was formed. *See, e.g., United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992); *Lockyer v. R.J. Reynolds*, 107 Cal. App. 4th 516, 524-25 (2003).

> "When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is reasonably susceptible to the interpretation urged by the party. If it is not, the case is over. ... If the court decides the language is reasonably susceptible to the interpretation urged, the court moves to the second question: what did the parties intend the language to mean?" ... "In interpreting an unambiguous contractual provision [a court is] bound to give effect to the plain and ordinary meaning of the language used by the parties." ... "If the contract is capable of more than one reasonable interpretation, it is ambiguous ..., and it is the court's task to determine the ultimate construction to be placed on the ambiguous language by applying the standard rules of interpretation to give effect to the mutual intention of the parties." ... "That intent is to be inferred, if possible, solely from the written provisions of the contract."

*Lockyer*, 107 Cal. App. 4th at 524-25 (citations omitted). Further, when a court interprets a contract to determine the parties' intent, "'[t]he whole of [the] contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." *Id.* at 525

(quoting Cal. Civ. Code § 1641). Finally, the Court's interpretation of the class definition "also should be informed by the apparent purpose of class certification and common questions among the class members." *Valdivia v. Schwarzenegger*, 2007 WL 3096168 at *1 (E.D. Cal. Oct. 22, 2007) (citing *In re Cement and Concrete*, 817 F.2d at 1443).

**B.     Defendants' Motion is Granted.**

Defendants posit that prisoners who are transferred to out-of-state facilities and prisoners who are housed in CCFs do not fall within the class definition, because the class definition must be interpreted in the context of the Amended Stipulation in its entirety. The Court certified the following class: "all current and future California state prisoners in the custody of the California Department of Corrections and Rehabilitation with serious dental care needs." (Class Cert. Order at 4:7-9 (emphasis added); *see also* Amended Stipulation ¶ 10 ("all California state prisoners in the custody of the CDCR who have serious dental care needs").)

The plain language of the class definition is broad enough to support Plaintiffs' interpretation of the scope of the class. Further, Plaintiffs' proposed construction also is supported by the apparent purpose of this action, namely to correct the manner in which the CDCR provided dental care. Notwithstanding this fact, the plain language of the class definition does not provide guidance as to "which subgroups were included in this class." *See Valdivia*, 2007 WL 3096168 at *4. The Amended Stipulation and its Exhibits, and evidence submitted in connection with this motion does, however, provide this Court with further guidance as to whether prisoners transferred out-of-state and prisoners housed within CCFs fall within the class.

**1.     Out-of-State Transfers.**

Defendants raised two primary arguments to support their argument that prisoners who are transferred out-of-state to private facilities do not fall within the class. First, they argue that these prisoners are not "in the custody" of the CDCR. Although these prisoners may not be in the physical custody of the CDCR, the Defendants did not persuade the Court that they are not, at the very least, in the constructive custody of the CDCR.

4

Second, Defendants argue that because prisoners are screened before they are transferred and no prisoners with "serious dental care needs" have been, or will be, transferred to out-of-state facilities and, therefore, there are no class members confined in those facilities. This argument does not take into account prisoners who may develop serious dental care needs after they are transferred. Further, the Court Representatives assert that Defendants' screening process is flawed and does not adequately ensure that class members are not transferred. However, based on the record currently before the Court, it cannot resolve any disputes over this issue. Further, in light of the Court's interpretation of the scope of the class definition, the Court need not address the screening process at this time. The Court nonetheless urges the parties to continue to work together to come to a mutually acceptable screening process to be used before inmates are transferred to out-of-state facilities to ensure that no inmates with serious dental needs are transferred.

The Amended Stipulation and the Implementation Plan attached as Exhibit B refer to 33 specific institutions and thereafter set forth the manner in which the parties agreed to remedy the alleged constitutional violations *at those institutions*. (*See id.* ¶¶ 12-13, 15-16, 20, 22-23, 25, 41.) In addition, in the Amended Stipulation, the parties state that Defendants Dr. Farber-Szekrenyi and Dr. William Kuykendall are responsible for, respectively, "supervising the provision of dental care for all prisoners in CDCR's custody" and providing "dental care for all prisoners in CDCR's custody." (*Id.* ¶¶ 6-7.) The parties further acknowledge that "[t]he parties understand and agree that the inmate grievance procedure (CDCR Form 602) is an important step in the provision of dental care. Accordingly, the parties agree that all complaints regarding dental care provided to an individual inmate, ... shall be submitted to Defendants using the inmate grievance procedure." (*Id.* ¶ 17.) The description of Dr. Farber-Szekrenyi's and Dr. Kuykendall's responsibilities and the use of the *CDCR's* grievance procedure as a preliminary step in resolving dental care grievances are inconsistent with Plaintiffs' interpretation of the class definition to encompass prisoners who have been transferred to out-of-state facilities.

Moreover, the undisputed evidence is that neither the Plaintiffs nor the Defendants contemplated the transfer of prisoners at the time they negotiated the terms and conditions of the

5

Amended Stipulation. Accordingly, notwithstanding the seemingly broad language of the class definition, when the Court considers the definition in the context of the Amended Stipulation as a whole, the Court finds that the parties did not intend to include prisoners who are transferred to out-of-state facilities within the definition of the class.

### 2. Community Correctional Facilities.

The Court also concludes that the class definition, when read in conjunction with the Amended Stipulation and its exhibits, does not encompass prisoners housed within the CCFs. The Court reaches this conclusion reluctantly, and with dismay. It is undisputed that prisoners housed in CCFs receive their dental care at the 33 institutions covered by the Amended Stipulation, and thus, it would seem logical to include prisoners housed in those facilities within the class. However, at the hearing, Defendants noted that the parties negotiated certain ratios contained within the Policies and Procedures based on the inmate population at the 33 listed institutions, and Dr. Kuykendall avers that "the dental program only requested resources to implement the P&Ps at the thirty-three institutions mandated in the Stipulated Injunction." (Kuykendall Decl., ¶ 3.)

Further, it is undisputed that when the parties sent out notice to the class, both before and after the final approval hearing, the parties provided notice *only* to the 33 institutions referenced in the Amended Stipulation. The parties, therefore, did not provide inmates housed in CCFs the opportunity to object to or comment upon the terms and conditions of the Amended Stipulation. These actions undermine Plaintiffs' argument that the parties intended to include prisoners housed at the CCFs within the scope of the Amended Stipulation.

### C. Plaintiff's Motion is Denied Without Prejudice.

Plaintiffs moved to alter the class definition pursuant to Federal Rule of Civil Procedure 23. However, under Rule 23, a court may amend or modify a class definition only before final judgment. *See Vizcaino v. U.S. Dist. Court (Microsoft Corp.)*, 173 F.3d 713, 721 (9th Cir. 1999). Plaintiffs' motion is untimely and, therefore, is DENIED on that basis. The Court's ruling is without prejudice to Plaintiffs filing a motion to amend the judgment, in which they may address not only whether the class should be expanded but also whether certain aspects of the Amended

Stipulation and its Policies and Procedures would require modifications to encompass an expanded class.

## **CONCLUSION**

For the reasons set forth above, the Court grants Defendants' motion regarding the class definition and denies without prejudice Plaintiffs' motion.

**IT IS SO ORDERED.**

Dated: March 10, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE