**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS PEREZ, et al., | |
| Plaintiffs, | No. C 05-05241 JSW |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO MODIFY STIPULATED INJUNCTION** |
| MATTHEW CATE, et al., | |
| Defendants. | |

## INTRODUCTION

Now before the Court for consideration is Plaintiffs' Motion to Modify the Stipulated Injunction. Having considered the parties' papers, relevant legal authority, the record in this case, and having had the benefit of oral argument, the Court HEREBY GRANTS IN PART AND DENIES IN PART the motion.

## BACKGROUND

As set forth in previous Orders of this Court, this case is now in the remedial phase of litigation regarding the adequacy of dental care provided by the California Department of Corrections and Rehabilitation to a class certified as "all current and future California state prisoners in the custody of the California Department of Corrections and Rehabilitation ("CDCR") with serious dental care needs." (*See* Docket No. 32 (Order Certifying Class for Purposes of Settlement and Remedial Phase of the Litigation ("Class Cert. Order") at 4:7-9); Docket No. 69 (Amended Stipulation and Order re Settlement (the "Amended Stipulation").)

In approximately November 2006, the CDCR began to transfer prisoners to private facilities in other states (the "COCF Program"). It is undisputed that, at the time the parties negotiated the original settlement agreement and the Amended Stipulation, the parties did not contemplate that Defendants would transfer prisoners to out-of-state of state facilities. (Declaration of Alison Hardy in Support of Motion to Modify Stipulated Injunction ("Hardy Decl."), ¶ 7; Docket No. 170 (Declaration of Charles Antonen ("Antonen Decl."), ¶ 6); Docket No. 171 (Declaration of William O. Kuykendall ("Kuykendall Decl."), ¶ 3).)

After the CDCR implemented the COCF program, a dispute arose between the parties about whether prisoners who were transferred pursuant to the program were members of the *Perez* class. In March 2008, this Court ruled that the class was limited to prisoners housed within the 33 institutions identified in the Amended Stipulation, and it also denied Plaintiffs' motion to amend the class definition. (Docket No. 195.)[1]

Defendants continue to transfer inmates under the COCF Program. Before an inmate is transferred, the inmate is screened to determine if he or she has serious dental needs. (*See* Hardy Decl., ¶ 6, Ex. E; Declaration of Dr. Morton Rosenberg ("Rosenberg Decl."), ¶ 3, Ex. A.) Pursuant to the Policies and Procedures implemented as part of the Amended Stipulation, inmates are supposed to be screened and given a Dental Priority Classification ("DPC") within 60 days of arrival at a Reception Center. (*See* Hardy Decl., ¶ 3, Ex. B (P&P, Chapter 2.2).) There are five classification codes: Priority 1, Urgent Care; Priority 2, Interceptive Care; Priority 3, Routine Rehabilitative Care; Priority 4, No Dental Care Needed; and Priority 5, Special Needs Care. (*Id.*, ¶¶ 3, 13, Exs. B, H (Polices and Procedures, Chapter 5.4).)

At the time Defendants began to implement the COCF Program, inmates with a DPC Code 1 or 2 were ineligible for transfer. In November 2007, however, Defendants issued a memorandum reflecting a modified policy, which provides that "only those inmates with a DPC #1 are ineligible and should not be transferred. Inmates with a DPC #2, #3, #4, and #5 are all

---

[1] The Court stated that its ruling was without prejudice to "Plaintiffs filing a motion to amend the judgment, in which they may address not only whether the class should be expanded but also whether certain aspects of the Amended Stipulation and its Policies and Procedures would require modifications to encompass an expanded class." (*Id.* at 6-7.) The Plaintiffs current motion does not seek such relief.

2

eligible for transfer to a COCF." (Hardy Decl., ¶ 19, Ex. M.) According to this memorandum, "[c]ompliance with the [Amended Stipulation] requires that any inmate with a DPC #2 (Interceptive Care) receive treatment within 120 days of the diagnosis. It is the responsibility of the COCF dentist(s) to evaluate all inmates with a DPC #2 after their arrival at the facility to ensure compliance with the 120-day time frame for treatment." (*Id.*)

The Court Representatives have submitted a report to the Court regarding the Defendants' pre-transfer screening procedure. (Hardy Decl., ¶ 21, Ex. O (Evaluation of California Department of Corrections and Rehabilitation Revised Screening Procedure for Transfer to Out-of-State Facilities (the "Evaluation").) The Court Representatives opine that Defendants' screening process is inadequate and that "[t]he application of this screening procedure results in an increased likelihood that inmates with essential dental care needs will be endorsed for COCF transfer." The Court Representatives also set forth a proposed screening protocol and recommend that "[t]he screening process and clinical criteria for endorsement be incorporated into the CDCR dental [Policies and Procedures]." (Evaluation at 11-12.) Defendants contend that the Court Representatives' recommended screening protocol is both inconsistent with the standard of care in dentistry and is more extensive than screening protocols used in other jurisdictions. (Rosenberg Decl., ¶ 4; Declaration of Dr. Stephen Merrill, ¶ 4.)

Plaintiffs now ask the Court to modify the Amended Stipulation "to require defendants to develop and implement an effective screening program, approved by the Court experts," and to suspend the COCF Program pending the development of such a program.

**ANALYSIS**

Plaintiffs ask the Court to modify the Amended Stipulation pursuant to Federal Rule of Civil Procedure 60(b)(5), but they do not articulate clearly what aspect of the Amended Stipulation they want modified. It appears to this Court that Plaintiffs do not, in fact, seek to *modify* the Amended Stipulation. Based on the requested relief, it appears that they seek to *enforce* the Amended Stipulation to ensure *Perez* class members, *i.e.* inmates with "serious dental needs," are not transferred to out-of-state facilities. Nonetheless, in light of the manner

3

in which Plaintiffs have framed the issue, the Court shall analyzes the motion under the standards applicable to Rule 60(b)(5).

**A.     Applicable Legal Standards.**

Plaintiffs seek relief pursuant to Federal Rule of Civil Procedure Rule 60(b)(5), which provides that "a court may relieve a party from a final judgment when 'the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; *or applying it prospectively is no longer equitable.*'" *United States v. Asarco, Inc.*, 430 F.3d 972, 979 (9th Cir. 2005) (quoting Fed. R. Civ. P. 60(b)(5)) (emphasis added). A party seeking relief under Rule 60(b)(5) must move for that relief within a "reasonable time," which depends upon the facts of each case. Fed. R. Civ. P. 60(c)(1); *United States v. Hotlzman*, 762 F.2d 720, 725 (9th Cir. 1985).[2] Rule 60(b)(5) "codifies the courts' traditional authority ... to modify or vacate the prospective effect of their decrees[.]" *Bellevue Manor Assoc. v. United States*, 165 F.3d 1249, 1252 (9th Cir. 1999).

As the party seeking to modify the Amended Stipulation, Plaintiffs bear "the burden of establishing that a significant change in circumstances warrants revision of the decree." *Rufo v. Inmates of Suffolk Co. Jail*, 502 U.S. 367, 383 (1992). The moving party also must show that the changed circumstances "make compliance with the consent decree more onerous, unworkable, or detrimental to the public interest." *Asarco*, 430 F.3d at 979 (quoting *Small v. Hunt*, 98 F.3d 789, 795 (9th Cir. 1996), in turn quoting *Rufo*, 502 U.S. at 384) (internal quotations omitted).

If Plaintiffs meet their burden, the Court "should consider whether the proposed modification is suitably tailored to the changed circumstance." *Id.* Because this case is governed by the Prison Litigation Reform Act, the Court also must ensure that any modification is "narrowly drawn, extends no further than necessary to correct the violation of the Federal

---

[2] Defendants argue that because the CDCR began to transfer inmates under the COCF Program in November 2006, Plaintiffs' motion is untimely. The Court rejects this argument. Plaintiffs' concerns relate to the screening procedure used prior to transfer, and not to the COCF Program in general. Plaintiffs brought their motion within a reasonable time after the meet and confer process did not yield constructive results, after they received the limited discovery on these issues, and after the Court Representatives issued their report setting forth their opinions on the screening procedures.

4

right, and is the least intrusive means necessary to correct the violation of the Federal Right."
18 U.S.C. § 3626(a)(1)(A); *see also Gilmore v. California*, 220 F.3d 987, 1007 (9th Cir. 2000)
(noting that the PLRA provides a "more exacting standard" for a court to follow than that set
forth in *Rufo*).

**B.      Plaintiffs' Motion is Granted in Part and Denied in Part.**

**1.      Plaintiffs Have Established a Significant Change in Circumstances.**

Under the Ninth Circuit's holding in *Asarco*, before the Court can modify the Amended Stipulation, it "must first interpret the terms and provisions of the [Amended Stipulation] as it would a contract to determine if the moving party anticipated a significant change in factual circumstances." *Asarco*, 430 F.3d at 976. If the moving party "'relies upon events that actually were anticipated at the time it entered into a decree,'" a court generally should not modify the decree. *Id.* (quoting *Rufo*, 502 U.S. at 385).

The Defendants contend that the COCF Program does not constitute a significant change in circumstances, because, at the time the parties entered into the Amended Stipulation, "there were already thousands of inmates housed at facilities not covered by the Stipulated Injunction," *i.e.* Community Correctional Facilities (CCFs). (Opp. Br. at 5:25-6:5.) The Court disagrees. When it ruled on the Defendants' motion regarding the class definition, the Court looked to the terms and provisions of the Amended Stipulation and concluded that the parties intended the class to encompass prisoners housed within the 33 institutions specified in that document. (Docket No. 195 (Order at 5:13-6:4).) The Court's ruling rested, in part, on the undisputed fact that when the parties negotiated the terms of the Amended Stipulation, they did not contemplate need to transfer prisoners to out-of-state facilities.

In addition, although it may be true that the Defendants routinely transferred inmates to CCFs, it also is undisputed that prisoners housed at CCFs receive dental care at the 33 institutions covered by the Amended Stipulation. (*Id.* at 6:8-11.) Thus, those inmates should receive dental care in accordance with the terms of the Amended Stipulation and the Policies

5

1 and Procedures. However, the COCF facilities are not expressly governed by those Policies and
2 Procedures.[3]

3 Defendants also take issue with the sufficiency of Plaintiffs' showing that instituting the
4 COCF Program has made compliance with the Amended Stipulation more onerous,
5 unworkable, or detrimental to the public interest, because the Evaluation is "based on a small,
6 non-representative sample" of inmates. (*Id.* at 6:23-24.) However, the Defendants have not
7 been the model of cooperation in allowing Plaintiffs or the Court Representatives access to
8 information regarding inmates endorsed for transfer and whether those inmates fall within the
9 class definition. (*See, e.g.,* Docket No. 265 (Order Granting Motion to Enforce Stipulated
10 Injunction and Court Order Re Experts); Hardy Decl., ¶¶ 10-11, 15; Evaluation at 5 n.3).) The
11 Court will not permit the Defendants to use their recalcitrance in producing information that
12 may bear on the viability of Plaintiffs' motion as both a shield and a sword.

13 Accordingly, the Court concludes that Plaintiffs have established their burden under the
14 first prong of the *Rufo* test.

**2.     Plaintiffs' Proposed Remedy Is Neither Narrowly Tailored Nor the Least Intrusive Means to Correct the Violation of the Federal Right.**

17 Plaintiffs ask this Court to suspend the COCF Program until Defendants have developed
18 a screening process that has been approved by both the Court Representatives and this Court.
19 Plaintiffs argue that, because they are not asking to stop the program entirely, their relief is
20 narrowly tailored and the least intrusive means to correct the violation of the right to
21 constitutionally adequate dental care.

22 If the Court were to suspend the COCF Program in its entirety, even temporarily, it
23 would likely exacerbate the conditions that gave rise to the program in the first instance. *See*
24 *generally California Correctional Peace Officers' Ass'n v. Schwarzenegger*, 163 Cal. App. 4th

---

[3] The Court does note that the contract between the State of California and Corrections Corporation of America (CCA) requires that CCA "shall provide services consistent with all applicable Federal, state, and local laws and regulations governing the delivery of offender health services and *any applicable Court orders*, including but not limited to orders issued in the" *Plata* and *Coleman* cases. (*See* Docket No. 176 (Declaration of Alison Hardy in Support of Opposition to Defendants' Motion Regarding Class Definition and Plaintiffs' Motion to Amend Class Definition, Ex. B at 13).)

6

1  802 (2008). Therefore, the Court denies, in part, Plaintiffs' motion on the basis that their
2  proposed remedy is not narrowly tailored or the least intrusive means to remedy the violation.
3  However, the Court concludes that it is necessary to address the adequacy of
4  Defendants' pre-transfer screening process. At the hearing on this motion, the parties advised
5  the Court that they have agreed to meet and confer to attempt to resolve the issue without
6  further Court intervention and without an evidentiary hearing. The parties also proposed setting
7  this matter down for a further hearing in thirty days. The Court finds the parties' proposal
8  reasonable. The Defendants urged the Court not to suspend the COCF program, in whole or in
9  part. Although the Court has concluded that Plaintiffs' proposal is unwarranted, it does believe
10 that some interim action is necessary.
11 Under the Policy and Procedures inmates are categorized by one of five DPC Codes.
12 Inmates with a DPC 1 Code require treatment from anywhere between 24 hours to 60 days, and
13 inmates with a DPC 2 Code require treatment within 120 days. In contrast, inmates with a DPC
14 3 Code require treatment within one year. When the COCF Program was first implemented, the
15 Defendants declared DPC Codes 1 *and* 2 ineligible for transfer. Although the Court expresses
16 no opinion on using the DPC Codes to define a "serious dental need," the Court concludes that
17 a more narrowly tailored approach to address the changed circumstances is to temporarily
18 require the Defendants to declare DPC Code 2 inmates ineligible for transfer under the COCF
19 Program.

**CONCLUSION**

21 Accordingly, it is HEREBY ORDERED that Plaintiffs' Motion to Modify the Stipulated
22 Injunction is GRANTED IN PART AND DENIED IN PART. It is FURTHER ORDERED that
23 the parties shall meet and confer in an effort to develop a mutually agreeable pre-transfer
24 screening protocol. By no later than March 20, 2009, the parties shall file a joint status report
25 advising the Court whether they have developed a mutually agreeable pre-transfer screening
26 protocol or whether they will require an evidentiary hearing on the matter. If the parties require
27 an evidentiary hearing, they shall submit a proposed date for the hearing, a discovery plan, and,
28 if necessary, a briefing schedule with their joint notice.

It is FURTHER ORDERED that the Defendants shall declare DPC Code 2 inmates ineligible for transfer from the date of this Order until March 27, 2009. If the parties will require an evidentiary hearing, the Court ORDERS Defendants to submit additional information to the Court about the impact of this interim suspension on the COCF Program in the joint status report, so that the Court can evaluate whether to extend the suspension pending resolution of the evidentiary hearing.

**IT IS SO ORDERED.**

Dated: February 23, 2009

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE